IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Michelle R. Southard, | ) | |
| Social Security No. XXX-XX-7455 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 3:07-cv-90 |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Michelle R. Southard (hereinafter "Southard," "claimant" or "plaintiff") initiated this action under 42 U.S.C. §§ 405(g) and 1383(C)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Plaintiff has filed a motion for summary judgment or in the alternative for remand (Doc. #16 and #19), and defendant has filed a motion for summary judgment (Doc. #22). For the reasons articulated in this memorandum, the magistrate judge **RECOMMENDS** that defendant's Motion for Summary Judgment (Doc. #22) be **GRANTED** and plaintiff's Motion for Summary Judgment or Motion for Remand (Doc. #16 and #19) be **DENIED**.

### *Background*

Southard filed her application for supplemental security income with a protective filing date of January 18, 2005. (Transcript (hereinafter "Tr.") at 75-77). In her application, Southhard

1

alleges she became disabled on May 13, 1993.  (Tr. at 75).  Southard previously received
disability benefits from 1994 until she remarried in 1998 and became ineligible due to her
husband's income.  (Tr. at 84).

Southard's application for benefits was denied initially and on reconsideration.  (Tr. at
36-41; 45-47).  She timely requested a hearing before an Administrative Law Judge ("ALJ").
(Tr. at 51-52).  An administrative hearing was held on December 5, 2006 before ALJ Lyle
Olson.  (Tr. at 352).  Southard appeared personally, represented by her attorney, Joanne Ottmar.
A vocational expert also testified at the hearing.  On March 12, 2007, the ALJ issued his
decision, finding that Southard was not disabled within the meaning of the Social Security Act.
(Tr. at 13-35).

Southard timely requested review of the ALJ's decision by the Appeals Council.  (Tr. at
11-12).  On August 29, 2007, the Appeals Council denied her request for review, affirming the
decision of the ALJ as the final decision of the Commissioner.  (Tr. at 6-9).  Southard seeks
judicial review of the Commissioner's decision in a Complaint filed on November 1, 2007.
(Doc. #3).

Southard was 52 years old at the time of the hearing.  (Tr. at 356).  She has a high school
education.  (Tr. at 358).  She was last employed in 1991 as an assistant manager for a "party
store."  (Tr. at 360).  The ALJ went through the five-step sequential analysis for evaluating a
disability claim.  He determined that plaintiff has the following "severe" impairments:
asthma/chronic obstructive pulmonary disease ("COPD"), fibromyalgia, and mild degenerative
disc disease with facet arthritis of the lumbar spine; however, he found that these impairments do
not meet or equal the requirements set forth in the Listing of Impairments.  (Tr. at 20, 25).  The

ALJ also considered plaintiff's other impairments, including restless leg syndrome, cataracts, and affective disorder, but found that these impairments were not "severe," even if considered in combination. (Tr. at 20-21, 25). The ALJ found that Southard retains the residual functional capacity ("RFC") to perform "light" work, with certain postural and environmental limitations. (Tr. at 26-33). The ALJ, relying on testimony from the vocational expert, found that Southard could perform jobs which existed in significant numbers in the national economy, such as assembler/package sorter and cashier. (Tr. at 34-35). Based on these findings, the ALJ concluded that Southard is not disabled.

### *Issues*

Southard asserts generally that the ALJ's findings are not supported by substantial evidence. (Plaintiff's brief, at 13). More specifically, she argues that the ALJ's decision should be reversed because her depression meets or equals the Listing for anxiety-related disorders. Id. at 14. Southard also argues that the ALJ's decision was erroneous because he improperly disregarded the opinions of her treating psychiatrist, evaluating psychologist, and medical doctor, and because he did not find Southard's complaints of pain and fatigue to be credible. Id. at 19-20.

Lastly, Southard argues that the ALJ should have accepted the hypothetical posed to the vocational expert in which the hypothetical person was markedly limited in her ability to concentrate for extended periods of time, markedly limited in her ability to complete a normal workday without interruption from psychologically based symptoms, and markedly limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. Id. at 20–21.

3

### *Legal Standard*

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).  To affirm the Commissioner's decision, the court must find that it is supported by substantial evidence appearing in the record as a whole.  Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion."  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992); Consolidated Edison Co., et al. v. National Labor Relations Bd., et al., 305 U.S. 197, 229 (1938).  The review of the record is more than a search for evidence supporting the Commissioner's decision; the court must also take into account matters that detract from the ALJ's findings and apply a balancing test to weigh evidence which is contradictory.  Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991); Sobania v. Secretary of Health & Human Services, 879 F.2d 441, 444 (8th Cir. 1989).

Under the Social Security Act, an individual is "disabled" if he or she is "unable to engage in any substantial gainful activity[1] by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months. . . ."  42 U.S.C. § 1382c(a)(3)(A).  The impairment(s) must be so severe that the applicant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

---

[1]"Substantial gainful activity means the performance of substantial services with reasonable regularity either in competitive or self-employment."  Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989).

Claims of disability are evaluated using a five-step sequential review.  See 20 C.F.R. § 416.920(a).  If the Commissioner finds that the applicant is either disabled or not disabled at any point in the review, the Commissioner does not continue the review.  The first step is to determine whether the applicant is engaged in substantial gainful employment.  If the applicant is so engaged, there is no disability.  If, however, the applicant is not engaged in substantial gainful employment, the second step is to consider whether the applicant has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities.[2]  If there is no limiting effect, the applicant is not disabled.  But, if the applicant is significantly limited by his or her impairment(s), the third step is to determine whether the impairments meet or equal a listed impairment.  If the impairments do meet or equal a listed impairment, the applicant is disabled.  The fourth step is to determine how the impairments affect the applicant's ability to perform past relevant work.  The applicant is not disabled if he or she is still able to perform past relevant work.  Finally, the fifth step is to determine whether the applicant can perform other work.  If the applicant cannot perform other work, the applicant is disabled.

_____

[2]"Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs," including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

5

The applicant bears the burden of proving disability.  Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994).  "However, if the claimant can demonstrate that she is unable to do past relevant work, and thereby reaches the fifth step in the process, the burden shifts to the [Commissioner], who must show that substantial gainful activity exists in the national economy which the claimant can perform."  Id.; See also Morse v. Shalala, 16 F.3d 865, 871 (8th Cir. 1994) ("Once the applicant demonstrates, under the fourth step, impairments that prevent her from returning to her previous work, the burden shifts to the Secretary to prove that jobs exist in the national economy that the applicant could perform.") (citing Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991)).

## *Analysis*

### I.    Substantial Evidence Shows that the ALJ Considered and Properly Weighed the Evidence From Plaintiff's Treating Psychiatrist and Medical Doctor.

Southard argues that the ALJ erred because he disregarded the opinions of her treating psychiatrist and medical doctor.  (Plaintiff's brief, at 19).  The ALJ's function is to resolve conflicts among the various treating and examining physicians.  Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).  Under the Commissioner's regulations, the opinions of treating sources are generally given greater weight.  See 20 C.F.R. § 404.1527 (d)(2); Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (recognizing the opinions of a treating physician are entitled to substantial weight).

A treating physician's opinion is given controlling weight, however, only "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."  House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (quoting Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005)).  Thus, while entitled to

special weight, a treating physician's opinion does not automatically control if the evidence from

the treating physician is itself inconsistent.  House, 500 F.3d at 744.  "When an ALJ discounts a

treating physician's opinion, he should give 'good reasons' for doing so."  Davidson v. Astrue,

501 F.3d 987, 990 (8th Cir. 2007) (citations omitted).

      A.     *Evidence From Claimant's Treating Psychiatrist*

     Southard's treating psychiatrist, Dr. Allen Broadhead, completed a psychiatric evaluation

of Southard on April 24, 2006.  (Tr. at 308).  At that time, Dr. Broadhead was uncertain whether

Southard's physical and psychological complaints met the criteria for mood disorder due to

general medical conditions, or adjustment disorder with depressed mood.  (Tr. at 309-10).  He

believed the more likely diagnosis was adjustment disorder with depressed mood.  (Tr. at 310).

The record indicates that after the initial interview, Southard returned to see Dr. Broadhead

approximately eight times.  (Tr. at 278-308).  Dr. Broadhead's progress notes of these visits

reveal that Southard, while feeling somewhat distraught at times, was articulate in her

presentation and did not show objective signs of mood disorder.  (Tr. at  278, 287, 293).  His

notes also reveal his belief that Southard is coping well with the stressors (Tr. at 287, 293); she

shows "significant insight into what she is experiencing" (Tr. at 278); she continues to enjoy her

bird feeders and dogs (Tr. at 287); and that her depressive disorder seems to be in moderate

remission even though the stressors in her life continue and she is unable to tolerate any

antidepressant medication.  (Tr. at 278, 280, 287, 293, 296, 299).

     On November 27, 2006, Dr. Broadhead completed an Affective Disorders Professional

Source Data Sheet at the request of Southard's attorney.  (Tr. at 329-342).  On the part of the

form addressing presence of clinical abnormalities, Dr. Broadhead found that Southard has

7

"[m]arked restriction of activities of daily living," "[m]arked difficulties in maintaining social functioning," and "[m]arked difficulties in maintaining concentration, persistence, or pace." (Tr. at 334-35). On another part of the form, under the category "specific residual functional capacities and limitations," Dr. Broadhead opined that Southard's general understanding and memory are <u>not</u> significantly limited, Southard's ability to interact socially is <u>not</u> significantly limited, and Southard's ability to adapt to changes is <u>not</u> significantly limited. (Tr. at 339-40). He noted only two areas in which he found Southard markedly limited on this part of the form. Those areas include the ability to maintain attention and concentration for extended periods of time, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 340).

As noted by the ALJ, Dr. Broadhead's assessment is not only internally inconsistent, but his specific functional capacity findings contradict his previous five months of progress notes. Under controlling law, the ALJ is entitled to give less weight to a treating physician's opinion if the evidence is inconsistent. <u>House</u>, 500 F.3d at 744. Because substantial evidence on the whole record supports the ALJ's finding that Dr. Broadhead's assessment is internally inconsistent and contradictory to other evidence, the magistrate judge finds that the ALJ did not err when he discounted Dr. Broadhead's opinion.

     2.     *Evidence From Claimant's Treating Medical Doctor*

Southhard claims that the ALJ also erred because he disregarded the opinions of her treating medical doctor, Dr. Andreas Sarrigiannidis. (Plaintiff's brief, at 19). Dr. Sarrigiannidis is a pulmonary specialist. The records indicate he examined Southard on three occasions:

December 13, 2005 (Tr. at 243-46); January 10, 2006 (Tr. at 241); and February 21, 2006 (Tr. at 273). Dr. Sarrigiannidis' notes of Southard's first visit on December 13, 2005 reveal Southard's main complaint was poor sleep. (Tr. at 243). At this visit, he reviewed Southard's pulmonary function testing and did not see evidence of emphysema, but saw "signs suspicious of asthma." (Tr. at 243, 245). He started treating Southard for restless leg syndrome and fibromyalgia, for which he prescribed Mirapex and amitriptyline. (Tr. at 245). He also prescribed steroids for her respiratory condition. Id.

When Southard returned for a follow-up visit on January 10, 2006, Dr. Sarrigiannidis noted that none of Southard's problems had resolved, because she did not obtain the medications due to her financial situation. (Tr. at 241). Dr. Sarrigiannidis again wrote Southard prescriptions and recommended she have them filled by mail so they would be cheaper. Id.

On February 21, 2006, Southard returned to see Dr. Sarrigiannidis. (Tr. at 273). He noted that Southard was doing better since she started taking the prescribed medications. His notes indicate that Southard's lungs were clear with no wheezing or crackles and her oxygen saturation was at 96 percent. (Tr. at 273). He found that Southard's insomnia and restless leg syndrome were improving and felt that her asthma was "mild persistent." (Tr. at 273). Dr. Sarrigiannidis adjusted the dosage of Southard's medications and recommended she follow up in two months. (Tr. at 274). The record does not contain any further follow up notes by Dr. Sarrigiannidis or from any other physician subsequently treating Southard for asthma-related difficulties.

On May 23, 2006, Dr. Sarrigiannidis wrote a letter to Southard's attorney recommending that Southard receive financial assistance, especially with regard to her prescription medications.

(Tr. at 263).  In the letter, he characterized Southard's asthma as "moderately persistent" and noted Southard's sensitivity to odors and perfumes.  Id.  He opined that Southard was confined to her home because of financial difficulties in obtaining medication to help control her respiratory condition.  Id.

The ALJ mistakenly thought Dr. Sarrigiannidis treated Southard only twice - on December 13, 2005 and January 10, 2006.  (Tr. at 31).  Dr. Sarrigiannidis actually treated Southard three times; however, it is the magistrate judge's opinion that the treatment notes from the third visit do not contain any findings or impressions that would alter the evidence as a whole.  With regard to the letter Dr. Sarrigiannidis wrote to Southard's attorney three months after seeing Southard for the last time, none of Dr. Sarrigiannidis' treatment notes or other evidence in the record support his finding that Southard is homebound.  In contrast, the records indicate that Southard is able to leave her house to attend regular appointments with her doctors and counselor, and she testified at the hearing that she is able to leave her house to have dinner with a friend.  (Tr. at 371-72).

The ALJ explicitly considered and weighed the evidence from Dr. Sarrigianndis.  (Tr. at 31).  The magistrate judge finds that the ALJ adequately considered Dr. Sarrigiannidis' opinion, sufficiently identified the inconsistencies between it and the other evidence in the record, and did not err in refusing to give controlling weight to his opinion.  See Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004) (finding ALJ properly refused to afford controlling weight to treating physician and nurse's opinions when opinions were inconsistent with other evidence in the record).  The magistrate judge concludes that the ALJ did not err by discounting Dr. Sarrigiannidis' opinion when the opinion was based on a limited treatment history and

10

inconsistent with other evidence in the record.

II.   **The Supplemental Evidence From the Evaluating Psychologist Submitted to the Appeals Council is Insufficient to Reverse the ALJ's Decision.**

On April 18, 2007,  Dr. Robert Gulkin completed a psychological evaluation at the request of Southard's attorney.  (Doc. #15, supplement to Plaintiff's brief).  Southard was not seeking treatment from Dr. Gulkin, but saw him for an evaluation at her attorney's request.  Id. Dr. Gulkin is not a treating psychologist; thus, his opinions are not entitled to the same weight that might be afforded a treating psychologist.  See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (noting a consulting physician's opinion is not entitled to special weight).

 Dr. Gulkin evaluated Southard after the ALJ issued his decision.  Evidence obtained after an ALJ's decision can be considered if it relates to the claimant's condition on or before the date of the ALJ's decision.  See Ingram v. Barnhart, 303 F.3d 890, 895 (8th Cir. 2002) (citing Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)).  Because Southard submitted Dr. Gulkin's evaluation letter to the Appeals Council, this court may review it to determine whether the Commissioner's decision continues to be supported by the record.  Id.  A reviewing court's function with regard to supplemental evidence is to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing.  Bergmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000).

During the evaluation, Southard reported to Dr. Gulkin a history of depression since sustaining a closed head injury in a car accident in 1993.  (Doc. #15, p. 3).  She reported current problems with concentration, sleeping, fibromyalgia, back pain, developing rheumatoid arthritis, constant pain, depression, breathing, driving, and developing cataracts.  (Doc. #15, p. 6).  The

reviewing court may consider only evidence that relates to a claimant's condition on or before the date of the ALJ's decision.  Ingram, 303 F.3d at 895.  Dr. Gulkin's report does not clarify whether each of Southard's reported current problems relate to her condition on or before the ALJ's decision.  Nevertheless, this court will assume the conditions existed at the time of the ALJ's decision because most of the issues addressed in Dr. Gulkin's report are referenced in other records that Southard presented to the ALJ.

As part of the psychological evaluation, Southard was able to complete "serial threes" without error.  (Doc. #15, p. 2).  While she completed the task slowly, Dr. Gulkin found Southard's performance was "error-free, contraindicating impairment in concentration."  Id. With regard to her emotional organization, Dr. Gulkin found that Southard described symptomatology consistent with a major depressive disorder; however, he also stated that medical records are needed to clarify the consistency of her reported physical discomforts with objective medical findings.  (Doc. #15, pp. 7-8).  Dr. Gulkin also administered an MMPI-2 test to Southard.  The profile generated from Southard's responses suggested malingering or a "cry for help."  (Doc. #15, pp. 6, 8).  Given the lack of objective medical evidence to support Southard's reported physical complaints along with the exaggerated MMPI profile generated from Southard's responses, the magistrate judge is not persuaded that Dr. Gulkin's report dated April 18, 2007 would have resulted in a different decision by the ALJ.

Dr. Gulkin met with Southard again on May 16, 2007 at the request of her attorney.  (Tr. at 346).  He provided to Southard's attorney an additional report dated May 21, 2007.  During this visit with Dr. Gulkin, Southard reiterated experiencing difficulty concentrating and with depression.  (Tr. at 346-47).  Southard also discussed her previous employment from many years

ago, her current difficulty performing day-to-day activities, her lack of hygiene, and her migraine headache recurrence a couple of times a week.  Id.  Based on Southard's subjective complaints, Dr. Gulkin concluded that Southard demonstrates a profile consistent with major depressive disorder, and, as a result, she is unable to perform full time employment.  (Tr. at 347).

Dr. Gulkin's report does not indicate whether the problems Southard discussed on this visit were present on or before the ALJ's decision or how long they have been present.  See Ingram, 303 F.3d at 895 (evidence obtained after an ALJ decision can be considered if it relates to the claimant's condition on or before the date of the ALJ decision).  Moreover, in forming his opinions, Dr. Gulkin relies on Southard's subjective complaints.  He does not cite any objective medical evidence to substantiate Southard's complaints.  Rather, he states in a conclusory manner that Southard's symptomatology demonstrates a severe impairment in social, vocational, and daily living functions.  (Tr. at 347).  Less weight may be given to a physician's opinion that is based largely on a claimant's subjective complaints rather than on objective medical evidence.  Kirby, 500 F.3d at 709.  Upon review of Dr. Gulkin's follow-up report, the magistrate judge is not persuaded that the ALJ would have reached a different decision had Southard presented the evidence at the initial hearing.  The court is satisfied that substantial evidence in the record as a whole supports the ALJ's findings and conclusions.

**III.     Southard Has Failed To Establish Her Depression is Disabling.**

Southard argues that the ALJ erred by not finding that she meets or equals the Listing for anxiety-related disorders.  (Plaintiff's brief, at 14).  She claims that her depression alone is disabling.  A plaintiff has the burden of proof to establish that her impairment meets or equals a listing.  Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  In order to meet a listed

impairment, the impairment must meet all of the Listing's specified criteria.  <u>Id.</u>

The Listing's specified criteria for depression is set out as follows:

The required level of severity for [affective] disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.     Medically documented persistence, either continuous or intermittent, of one of the following:

       1.     Depressive syndrome characterized by at least four of the following:
           a.     anhedonia or pervasive loss of interest in almost all activities; or
           b.     appetite disturbance with change in weight; or
           c.     sleep disturbance; or
           d.     psychomotor agitation or retardation; or
           e.     decreased energy; or
           f.     feelings of guilt or worthlessness; or
           g.     difficulty concentrating or thinking; or
           h.     thoughts of suicide; or
           i.     hallucinations, delusions or paranoid thinking; or

       2.     Manic syndrome characterized by at least three of the following:
           a.     hyperactivity; or
           b.     pressure of speech; or
           c.     flight of ideas; or
           d.     inflated self-esteem; or
           e.     decreased need for sleep; or
           f.     easy distractibility; or
           g.     involvement in activities that have a high probability of painful consequences which are not recognized; or
           h.     hallucinations, delusions or paranoid thinking;

      Or

       3.     Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

      And

14

B.    Resulting in at least two of the following:

1.    Marked restriction of activities of daily living; or
2.    Marked difficulties in maintaining social functioning; or
3.    Marked difficulties in maintaining concentration, persistence, or pace; or
4.    Repeated episodes of decompensation, each of extended duration;

Or

C.    Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.    Repeated episodes of decompensation, each of extended duration; or

2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. 404, Subpt. P, App. 1.

Southard argues that she meets the criteria listed in subparts A and B. The ALJ found that Southard meets the criteria in subpart A, but does not meet the criteria in subpart B. (Tr. at 23-25). The magistrate judge has reviewed the evidence in the record and finds that substantial evidence exists to support the ALJ's determination that Southard does not meet the requirements in subpart B, and the evidence on which Southard relies in her brief is insufficient to reverse the Commissioner's decision.

Southard relies on the opinions of Drs. Gulkin and Broadhead as evidence that her depression meets the Listing requirements and prevents her from working. (Plaintiff's brief, at

15

14-19).  Dr. Gulkin opined that Southard's depression alone is disabling.  (Tr. at 347).  As noted

previously, Dr. Gulkin is not a treating physician and his opinion need not be afforded

controlling weight.  Moreover, "[s]tatements that a claimant could not be gainfully employed are

not medical opinions but opinions on the application of the statute, a task assigned solely to the

discretion of the Commissioner."  Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)

(quotation and citation omitted).  Thus, the issue of whether Southard is able to work is an area

reserved for the Commissioner and not the type of "medical opinion" to which the

Commissioner must give controlling weight.  Vandenboom, 392 F.3d at 994;  Ellis v. Barnhart,

392 F.3d 988, 994 (8th Cir. 2005).

Thus, even if Dr. Gulkin's opinion had been available to the ALJ at the initial hearing, it

would not have been entitled to controlling weight.  Any weight that the ALJ would have given

to his opinion is lessened by the fact that Dr. Gulkin's opinion is not supported by objective

medical findings and merely relies on Southard's subjective complaints at the time.  Upon

review of the record as a whole, the magistrate judge finds that substantial evidence supports the

ALJ's decision that Southard's depression does not meet the Listing requirements and Dr.

Gulkin's opinion is insufficient to reverse the Commissioner's decision.

Southard also relies on Dr. Broadhead's opinion as support for her argument that her

depression is disabling.  Dr. Broadhead initially opined that Southard's mental condition meets

the criteria for major depressive disorder, but that the intensity varies with her general medical

condition.  (Tr. at 341).  As discussed previously, the ALJ considered Dr. Broadhead's

assessment of Southard's functional limitations and refused to assign significant weight to his

opinions, as the form he completed was internally inconsistent and contradictory to other

16

evidence in the record.  (Tr. at 24-25).  The magistrate judge does not find error in the weight the ALJ gave to Dr. Broadhead's opinion.

After the ALJ issued his decision, Dr.  Broadhead wrote a letter responding to the ALJ's concerns in discounting his opinion.  This letter was submitted to the Appeals Council.  Dr. Broadhead opined "the combination of the Depressive Disorder coupled with the General Medical Conditions" renders Southard disabled and unable to work.  (Tr. at 343-44).  He also stated that "it is the total picture that produces the incapacity."  Id.  The issue of whether Southard can work is left to the ALJ's discretion.  Vandenboom, 392 F.3d at 994.  Dr. Broadhead does not address Southard's functional limitations in any way other than to state in a conclusory manner that she meets the criteria for dysphoric mood.  (Tr. at 343-44).  He does not explain how Southard meets the Listing requirements for depression.  The magistrate judge is not persuaded that the ALJ's decision would have differed had Southard presented this letter from Dr. Broadhead at the initial hearing, or that it serves as a sufficient basis to reverse the Commissioner's decision.

The magistrate judge has reviewed Dr. Gulkin and Dr. Broadhead's opinions as well as all of the other evidence in the record and finds that ample evidence exists in the record to support the ALJ's conclusion that Southard's depression is not disabling.  Because Southard failed to meet her burden of proof in demonstrating that she meets the requirements of the Listing for anxiety-related disorders, the magistrate judge recommends that Plaintiff's motion for summary judgment be denied and Defendant's motion for summary judgment be granted.

**IV.    Substantial Evidence Supports the ALJ's Findings Regarding Claimant's Credibility.**

Southard argues that the ALJ erred in not finding her complaints of pain and fatigue to be

17

credible.  (Plaintiff's brief, at p. 20).  When evaluating a disability claim based on pain and/or

fatigue, an ALJ must consider the claimant's subjective complaints under the standard set forth

in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).  See Siemers v. Shalala, 47 F.3d 299, 301

(8th Cir. 1995).  Under Polaski, the ALJ must consider all evidence presented that relates to

plaintiff's subjective complaints in determining whether such complaints are credible evidence

of a disability.[3]  An ALJ may not reject a claimant's subjective complaints solely because of a

lack of medical evidence.  Benson v. Heckler, 780 F.2d 16, 17 (8th Cir. 1985).  Furthermore,

"before an ALJ may reject a claimant's subjective complaints of pain, the ALJ must make

express credibility determinations" and "detail[] his reasons for discrediting the testimony."

Ricketts v. Secretary of Health and Human Services, 902 F.2d 661, 664 (8th Cir. 1990).  These

specific findings "must demonstrate that [the ALJ] evaluated all the evidence" relevant to the

claimant's pain.  Herbert v. Heckler, 783 F.2d 128, 130 (8th Cir. 1986).

The ALJ is in a better position then the court to gauge credibility and resolve conflicts in

the evidence.  Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007).  The Eighth Circuit has

stated that a claimant's credibility is primarily a matter for the ALJ to decide.  Anderson v.

Barnhart, 344 F.3d 809, 814 (8th Cir. 2003).  Thus, the ALJ's credibility determinations are

given deference "so long as such determinations are supported by good reasons and substantial

---

[3]The ALJ must consider all evidence of plaintiff's subjective complaints, including prior work history, as it relates to:

(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional limitations.

Polaski, 739 F.2d at 1322.

evidence." <u>Vester v. Barnhart</u>, 416 F.3d 886, 889 (8th Cir. 2005).

The ALJ considered the <u>Polaski</u> factors when evaluating Southard's credibility. (Tr. at 27-33). The court is satisfied that the ALJ provided good reasons for his credibility findings, and those reasons are supported by the record and are consistent with controlling law. First, the ALJ considered Southard's poor work history. (Tr. at 28). Southard was last employed in 1991. (Tr. at 79). The record shows that throughout her life, Southard has only worked sporadically with low and inconsistent earnings since 1969. <u>Id.</u> A poor work history may be indicative of lack of motivation to work rather than a lack of ability. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001). Further, as noted by the ALJ, the medical records reveal that Southard focused at times on obtaining disability payments rather than on improving her condition so that she can work. (Tr. at 28). Southard's expressed low interest in employment and focus on getting disability is a legitimate basis in which the ALJ could discredit her subjective complaints. <u>See Ostronski v. Charter</u>, 94 F.3d 413, 419 (8th Cir. 1996).

The ALJ is also permitted to discredit a claimant's subjective complaints if there are inconsistencies in the evidence. <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1186 (8th Cir. 1989). The ALJ considered Southard's testimony at the hearing regarding the degree and duration of pain along with her alleged functional limitations and found her testimony was not consistent with the record as a whole. (Tr. at 32-33). The records from Southard's treating medical doctors, treating psychiatrist, and licensed social worker reveal that Southard rarely complained of any pain during her visits. At the hearing, she testified she experiences fibromyalgic pain every day, averaging eight or nine on a ten-point scale, as well as arthritic pain every day, averaging six or seven on a ten-point scale (Tr. at 366, 369). Despite her level of pain, Southard testified that she

19

does not regularly take medication for the pain.  (Tr. at 366).

Southard's failure to seek medical treatment and the lack of prescribed medication for pain is a proper basis on which the ALJ may discredit her subjective complaints of pain.  See Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) (lack of evidence that the claimant has received medical treatment or pain medications may be used to discredit allegations of disabling pain).  The magistrate judge finds that under the deferential standard afforded to the ALJ's credibility determinations substantial evidence in the record supports the ALJ's finding discrediting Southard's claim of disabling pain.

Southard also alleges breathing difficulties render her unable to work.  She testified that she has experienced problems with asthma and emphysema for six years.  (Tr. at 361).  She further testified that she has not been hospitalized as a result of her asthma or emphysema and has made only one emergency room visit because of chest pains and inability to breathe with discharge on the same day.  (Tr. at 361).  According to Southard's medical records, her pulmonary function studies and oxygen saturation tests indicate only a mild respiratory condition.  (Tr  at 186, 245, 256).  One of her treating doctors refused to provide Southard a note supporting her claim of inability to work due to her respiratory condition because he believed she could work.  (Tr. at 197).  Additionally, pulmonary function tests fail to reflect values which are equal to or less than the values specified in the Listing for chronic pulmonary insufficiency.  (Tr. at 26).  The magistrate judge finds there is substantial evidence in the record supporting the ALJ's discrediting of Southard's claim that breathing difficulties render her unable to go outside the home, much less work at all.

The court must give deference to the ALJ's credibility determinations so long as "good

reasons" and substantial evidence supports them.  Vester, 416 F.3d at 889.  The magistrate judge concludes that the ALJ's credibility determination with regard to Southard's pain and functional limitations is supported by good reasons and substantial evidence.

**V.      Substantial Evidence Supports the Hypotheticals Relied on by the ALJ.**

Southard argues that a hypothetical with the following limitations fits her capacities and should have been accepted by the ALJ: (1) marked limitations with respect to the ability to maintain attention and concentration for extended periods; (2) marked limitations with respect to the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and (3) marked limitations to perform at a consistent pace without unreasonable number of rest periods.  (Plaintiff's brief, at 20-21).

"A hypothetical question . . . need only include impairments that are supported by the record and which the ALJ accepts as valid."  McKinney v. Apfel, 228 F.3d 860, 865 (8th Cir. 2000).  Here, the ALJ specifically rejected Southard's claim that she has marked limitations with regard to her ability to concentrate, perform at a consistent pace, and complete a normal workday.  Instead, he found that Southard has no more than "mild" limitations in the areas of concentration, persistence, and pace.  (Tr. at 25).  After reviewing the record as a whole, the magistrate judge finds that substantial evidence supports the ALJ's determination regarding the extent of Southard's functional limitations.  Because the ALJ did not accept all of the impairments claimed by Southard regarding her ability to concentrate, perform at a consistent pace, and complete a normal workday, he did not err in rejecting a hypothetical incorporating impairments he did not accept as valid.  See McKinney, 228 F.3d at 865.

The ALJ determined that Southard retains the residual functional capacity for "light"

21

work with certain postural limitations and environmental limitations due to her pulmonary impairments, including avoidance of concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. at 26, 33). Assuming these limitations, the vocational expert, James Berglie, testified that Southard would be able to perform past work existing in the national economy along with a number of other unskilled jobs, such as assembler, packager, information office clerk, phone survey clerk, and cashier. (Tr. at 381-82). The vocational expert further testified that these jobs each range in number from 1,100 to 8,000 in this region. Id. If the hypothetical were further restricted to contact with the public on only a brief and superficial basis due to Southard's sensitivity to odors and perfumes, the vocational expert testified that there are hundreds and thousands of jobs in this region that would still qualify. (Tr. at 385).

The ALJ specifically rejected Dr. Broadhead's opinion which would support the hypothetical relied on by Southard. The record as a whole shows substantial evidence supporting the ALJ's reliance on the hypotheticals involving the performance of unskilled "light" work with the additional postural and environmental limitations to account for Southard's respiratory condition. The positions identified by the vocational expert appropriately reflect Southard's pulmonary impairments, mental impairments, and physical limitations. Thus, after considering the evidence in the record as a whole, the magistrate judge finds that the ALJ properly evaluated Southard's physical and mental impairments and his determination is supported by substantial evidence.

### *Conclusion*

The ALJ properly found that while Southard does have impairments that impact her ability to work, she is not "disabled" as defined by the Social Security Act. After considering

the errors alleged by Southard, the magistrate judge is satisfied that substantial evidence supports

the ALJ's findings and conclusions.

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment or in the

alternative Motion for Remand (Doc. #16 and #19) be **DENIED** and defendant's Motion for

Summary Judgment (Doc. #22) be **GRANTED**.  Judgment should be entered affirming the

decision of the Commissioner.

Pursuant to Local Rule 72.1(E)(4), any party may object to this recommendation within

ten (10) days after being served with a copy.

Dated this 24th day of July, 2008.

*/s/ Karen K. Klein*
Karen K. Klein
United States Magistrate Judge